Filed 8/20/21  In re A.R. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re A.R., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> M.B., <br><br> Defendant and Appellant. | A158143 <br><br> (Alameda County <br> Super. Ct. No. JD-028398-02) |

M.B. (Mother) appeals from the juvenile court's termination of her parental rights to her daughter, A.R.  She asserts the court erred in concluding the beneficial relationship exception to termination of parental rights did not apply because it did not conduct the Welfare and Institutions Code section 366.26[1] hearing in conformance with the principles articulated in *In re Caden C.* (2021) 11 Cal.5th 614 (*Caden C.*).[2]  We reverse and remand.

_____

[1]  All further undesignated statutory references are to the Welfare and Institutions Code.

[2]  In her initial opening brief, Mother maintained the juvenile court erred in denying her section 388 petition after excluding her supporting evidence, as well as erred in not applying the beneficial parental relationship

1

# BACKGROUND

This appeal is before us on remand from the Supreme Court following its reversal of our dismissal of the appeal on the ground it was not timely filed. (*In re A.R.* (2021) 11 Cal.5th 234, 257-258.) The high court held that when parents' "court-appointed attorneys have failed to timely file a notice of appeal of an order terminating parental rights, parents whose rights have been terminated may seek relief based on the denial of the statutory right to the assistance of competent counsel. [Citations.] To succeed in such a claim, parents must show that they would have filed a timely appeal absent attorney error and that they diligently sought relief from default within a reasonable timeframe, considering the child's ' "unusually strong" ' interest in finality." (*Ibid.*) Following remand, we issued an order reinstating the appeal.

We set forth some of the background of the case as stated in the Supreme Court's opinion and set forth specific facts relating to the issue on appeal in our discussion of the issue.[3]

"M.B. gave birth to A.R. in 2016. At the time, M.B. herself was still a minor. Less than a year later, the Alameda County Social Services Agency (Agency) filed a petition under . . . section 300 to have A.R. declared a dependent of the court. The operative petition alleged that M.B. had mental health concerns, such as depression, that impeded her ability to care for her

---

exception. Following issuance of *Caden C.,* Mother made a motion to strike her argument regarding the beneficial relationship exception and to file a supplemental brief addressing the issue, which we granted. In her reply brief, Mother withdrew her claim regarding the section 388 evidentiary ruling.

[3] We take judicial notice of the opinion in *In re A.R.*, as well as this court's records in mother's petition for writ of habeas corpus in case number A159518. (Evid. Code, §§ 452, 459.)

child.  The juvenile court sustained the petition.  Although the court attempted to place A.R. with M.B., M.B. later raised concerns about her ability to care for A.R. while she finished high school.  The court ordered A.R. placed in a foster home while M.B. participated in family reunification services.

"Several months later, the court entered an order terminating reunification services.  The court noted that it was encouraged by the mother's recent progress, however, and expressed openness to M.B. bringing a future petition under . . . section 388 . . . to modify the order.  M.B.'s court-appointed attorney prepared a record documenting M.B.'s progress as a parent and her bond with A.R.  The court later found M.B. had made a prima facie case that circumstances had changed so as to warrant modification and accordingly granted her an evidentiary hearing.

"Two years after A.R. was first declared a dependent, the juvenile court scheduled a hearing to determine whether to grant M.B.'s section 388 modification petition or, in the alternative, whether to terminate M.B.'s parental rights.  (See . . . § 366.26. . . .)  Although M.B. had planned to testify in support of her section 388 petition, on the day of the hearing she had a health emergency that landed her in the emergency room and was unable to attend.  Because her original court-appointed attorney was in the process of quitting her job at the time, a new attorney participated in the hearing on M.B.'s behalf.

"At the hearing, the court rejected M.B.'s section 388 modification petition, having excluded M.B.'s supporting evidence on technical grounds. The court then turned to the question of whether to permanently sever M.B.'s parental rights.  M.B.'s attorney urged the court instead to apply the beneficial parental relationship exception to the termination of parental

rights.  (§ 366.26, subd. (c)(1)(B)(i).)  The court rejected that argument and entered an order terminating M.B.'s parental rights." (*In re A.R.*, *supra*, 11 Cal.5th at pp. 243–244.)

## DISCUSSION

### *The Parental Benefit Exception*

The purpose of a section 366.26 hearing is to select a permanent plan for the child after reunification services have terminated.  (*In re Marilyn H.* (1993) 5 Cal.4th 295, 304; § 366.26, subd. (b)(1).)  " 'At a permanency plan hearing, the court may order one of three alternatives:  adoption, guardianship or long-term foster care.  [Citation.]  If the dependent child is adoptable, there is a strong preference for adoption over the alternative permanency plans.' "  (*In re B.D.* (2021) ___Cal.App.5th ___, 2021 WL 3161564, *3.)

"Even when a court proceeds to select a permanent placement for a child who cannot be returned to a parent's care, the parent may avoid termination of parental rights in certain circumstances defined by statute.  One of these is the parental-benefit exception.  What it requires a parent to establish, by a preponderance of the evidence, is that the parent has regularly visited with the child, that the child would benefit from continuing the relationship, and that terminating the relationship would be detrimental to the child.  (See . . . § 366.26, subd. (c)(1)(B)(i); Evid. Code, § 115.)"  (*Caden C., supra,* 11 Cal.5th at pp. 629-630.)

"The existence of the parent-child relationship exception is determined by taking into consideration many variables which affect a parent-child bond including, '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.' "  (*In re B.D., supra*, 2021

4

WL 3161564 at *3, quoting *In re Autumn H*. (1994) 27 Cal.App.4th 567, 576.) " 'Because terminating parental rights eliminates any legal basis for the parent or child to maintain the relationship, courts must assume that terminating parental rights terminates the relationship. [Citations.] What courts need to determine, therefore, is how the child would be affected by losing the parental relationship—in effect, what life would be like for the child in an adoptive home without the parent in the child's life.' [Citation.] If severing the natural parent-child relationship exception would deprive a 'child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated.' " (*In re B.D.,* at *3.)

### *The* Caden C. *Analysis*

Mother maintains the trial court erred in concluding the parental-benefit exception to termination of parental rights did not apply. She asserts the juvenile court failed to make specific findings or to "engage in the required 'subtle case-specific inquiry' " mandated by *Caden C.*

In *Caden C.*, the minor had been declared a dependent child due to Mother's substance abuse and mental health issues. (*Caden C., supra,* 11 Cal.5th at p. 626.) At the section 366.26 hearing, Caden's mother asserted the parental-benefit exception applied. (*Caden C.,* at p. 627.) The trial court heard testimony "from numerous witnesses for both Mother and the Agency," including Mother's expert who had conducted a bonding study and an expert from the Agency. (*Ibid.*) Both experts testified to the strong bond between Caden and his mother. (*Id.* at pp. 627-628.) The Agency's expert opined " 'the narrowness of the bond poses a risk to [Caden's] ability to devote his attention, energy, investment to developmentally appropriate tasks now of learning [and] socialization.' " (*Id.* at p. 627.) Mother's expert testified that

Mother's interactions with Caden were "generally positive," and that "Caden had an intense bond with Mother of the kind that might tend to impede Caden in forming relationships with others but did not seem to have done so in his case." (*Id*. at p. 628.) He believed "given the intense bond, losing contact with Mother would compound Caden's other traumas leading to significant emotional fluctuation, confusion, and acting out in the near term and in adolescence." (*Ibid*.) The trial court ruled Mother had established the parental-benefit exception, precluding termination of parental rights. (*Ibid*.)

The Court of Appeal reversed, taking "particular issue with the trial court's suggestion that Mother had ' "substantially complied with her case plan" and "continues her efforts to maintain her sobriety and address her mental health issues." ' " (*Caden C.*, *supra*, 11 Cal.5th at p. 629.) The Supreme Court "granted review to clarify the applicability of the parental-benefit exception—in particular, whether a parent must show progress in addressing issues such as drug abuse that led to the child's dependency in order to establish the exception—and to resolve the standard of review for decisions regarding the parental-benefit exception." (*Ibid*.)

The Supreme Court first explained the purpose and scope of a section 366.26 hearing. "If the court cannot safely return a dependent child to a parent's custody within statutory time limits, the court must set a hearing under section 366.26. [Citation.] [¶] At the section 366.26 hearing, the question before the court is decidedly not whether the parent may resume custody of the child. . . . Indeed, when the court orders the section 366.26 hearing, reunification services have been terminated, and the assumption is that the problems that led to the court taking jurisdiction have not been resolved." (*Caden C.*, *supra*, 11 Cal.5th at p. 630.)

6

"[W]hen the court holds a section 366.26 hearing, it all but presupposes that the parent has not been successful in maintaining the reunification plan meant to address the problems leading to dependency." (*Caden C.*, *supra*, 11 Cal.5th at p. 637.)  Accordingly, "[p]arents need not show that they are 'actively involved in maintaining their sobriety or complying substantially with their case plan' " and "[a] parent's continued struggles with the issues leading to dependency are not a categorical bar to applying the exception." (*Ibid.*)  Nonetheless, a parent's struggle with such issues are relevant "to the extent they inform the specific questions before the court:  would the child benefit from continuing the relationship and be harmed, on balance, by losing it?" (*Id.* at p. 638.)

The readiness of parents to have a child returned to their custody is not "relevant to the application of the parental-benefit exception." (*Caden C.*, *supra*, 11 Cal.5th at p. 638.)  Thus, even where parents have not demonstrated a likelihood that they will ever be able to regain custody, the court should not terminate parental rights if doing so "would, when weighed against the offsetting benefits of an adoptive home, be detrimental to the child." (*Ibid.*)  In sum, "[t]he exception preserves the child's right to the relationship even when the child cannot safely live with that parent.  What it does not allow is a judgment about the parent's problems to deprive a child of the chance to continue a substantial, positive relationship with the parent." (*Id.* at p. 643.)

"Accordingly, courts should not look to whether the parent can provide a home for the child; the question is just whether losing the relationship with the parent would harm the child to an extent not outweighed, on balance, by the security of a new, adoptive home. . . .  Even where it may never make sense to permit the child to live with the parent, termination may be

7

detrimental.  [Citation.]  And the section 366.26 hearing is decidedly not a contest of who would be the better custodial caregiver." (*Caden C.*, *supra*, 11 Cal.5th at p. 634.)

"[U]nderstanding the harm associated with severing the relationship is a subtle enterprise— sometimes depending on more than just how beneficial the relationship is.  In many cases, 'the strength and quality of the natural parent/child relationship' will substantially determine how detrimental it would be to lose that relationship, which must be weighed against the benefits of a new adoptive home.  [Citation.]  A child would benefit from continuing a strong, positive, and affirming relationship, and it would be destabilizing to lose that relationship.  Sometimes, though, a relationship involves tangled benefits and burdens.  In those cases, the court faces the complex task of disentangling the consequences of removing those burdens along with the benefits of the relationship." (*Caden C.*, *supra*, 11 Cal.5th at p. 634.)

The high court next addressed the applicable standard of review.  It concluded, "We agree with the general consensus:  a substantial evidence standard of review applies to the first two elements.  The determination that the parent has visited and maintained contact with the child 'consistently,' taking into account 'the extent permitted by the court's orders' [citation] is essentially a factual determination.  It's likewise essentially a factual determination whether the relationship is such that the child would benefit from continuing it." (*Caden C., supra*, 11 Cal.5th at pp. 639-640.)

"The third element—whether termination of parental rights would be detrimental to the child—is somewhat different.  As in assessing visitation and the relationship between parent and child, the court must make a series of factual determinations.  These may range from the specific features of the

8

child's relationship with the parent and the harm that would come from losing those specific features to a higher-level conclusion of how harmful in total that loss would be. The court must also determine, for the particular child, how a prospective adoptive placement may offset and even counterbalance those harms. In so doing, it may make explicit or implicit findings ranging from specific benefits related to the child's specific characteristics up to a higher-level conclusion about the benefit of adoption all told. All these factual determinations are properly reviewed for substantial evidence." (*Caden C.*, *supra*, 11 Cal.5th at p. 640.)

The court went on to explain, however, that the juvenile court "must also engage in a delicate balancing of these determinations as part of assessing the likely course of a future situation that's inherently uncertain. The decision is not the same as a determination whether to transfer the child from the custody of one caregiver to another, but it does require assessing what the child's life would be like in an adoptive home without the parent in his life. [Citation.] The court makes the assessment by weighing the harm of losing the relationship against the benefits of placement in a new, adoptive home. And so, the ultimate decision—whether termination of parental rights would be detrimental to the child due to the child's relationship with his parent—is discretionary and properly reviewed for abuse of discretion." (*Caden C.*, *supra*, 11 Cal.5th at p. 640.)

### *The Section 366.26 Hearing*

The Section 366.26 hearing in the instant case was initially set for February 2019. In its addendum report for that hearing, the Agency reported Mother was in agreement with adoption by the caregiver. The Agency noted there had been a Child and Family Team meeting, which Mother attended

9

without her attorney.  At that meeting, Mother agreed with the adoption recommendation.

At the hearing, however, Mother's attorney indicated Mother was not in agreement with the adoption recommendation.  Counsel expressed concern that Mother was "essentially given legal advice" at the Child Family Team meeting and "told she had no other option than legal adoption."  Counsel requested a bonding study and a continuance of the hearing.  The court granted the request for a continuance but denied the request for a bonding study "if it is being requested at Court expense."[4]

In the Agency's report for the continued hearing, it reported "[M]other is clearly motivated to protect [A.R.].  When the grandmother became violent, [Mother] quickly contacted the caregivers to get [A.R.] out of the situation."  As to visitation, the Agency stated "[A.R.] has been out of [Mother's] care for a year, and the mother is not in a position to resume custody.  [Mother] has been visiting, but does not always have control over the chaotic environment where she currently lives, and there have been times when she has had to cut visits short or cancel."  One instance was because Mother had "voluntarily been hospitalized" for five days.  The Agency reported this showed good judgment on Mother's part, because she sought help when she "was experiencing depression."  The hearing was again continued, ultimately until June.

---

[4] Mother did not contest that ruling.  The Supreme Court in *Caden C.* explained:  "Trial courts should seriously consider, where requested and appropriate, allowing for a bonding study or other relevant expert testimony." (*Caden C., supra,* 11 Cal.5th at p. 633, fn. 4).  "[O]ften expert psychologists[,] who have observed the child and parent can synthesize others' observations[,] will be an important source of information about the psychological importance of the relationship for the child."  (*Id.* at pp. 632–633.)

10

In its report for the continued hearing, the Agency indicated the current visitation schedule for Mother "is two weekend visits per month (Friday through Sunday) and one additional day per month." Although Mother had unsupervised visitation with A.R., the Agency reported "[M]other continues to cut visits short" for various reasons. The caregiver reported A.R. was "dysregulated" after the visits. The Agency recommended termination of parental rights "based on the findings made herein and on previous findings and orders terminating or denying services to the parents."

At the continued hearing, Mother's attorney raised the parental benefit exception to termination of Mother's rights. She maintained "it's an unfair inference for the Agency to argue that [A.R.], according to the caregiver, is dysregulated when she returns from visits with [Mother], it's unfair to infer that that is because of anything negative happening during the visits. . . . [Given] the evidence that we have it could also be just as reasonably inferred that [A.R.] is dysregulated after she returns from visits with [Mother] because she is bonded to [Mother], that she benefits from spending time with [Mother] and it is difficult to have to leave [Mother] because she does have such a strong bond with [Mother]."

The Agency sought admission of five of its prior reports, one prepared for the continued June section 366.26 hearing, a report and addendum for a March 20 scheduled hearing, and a section 366.26 report and an addendum prepared for the February 6 hearing. The court admitted those reports and declared the matter "submitted on the evidence."

After hearing argument from counsel for the Agency, Mother, and A.R., the court recessed to "review a few reports that were admitted into evidence." The court subsequently ruled "the recommendations found at the end of the [Agency's] memorandum prepared for today's date, June 12, are appropriate

11

to our circumstances. The Court will not find on our record that the parental benefit exception applies in this case." The court further stated that "[t]oday's termination of parental rights is based upon the findings made today and previous findings made denying and/or terminating services to the parents."

It is not clear what the "findings made today" consisted of, other than the juvenile court's reliance on its prior findings. And those prior findings were made in connection with terminating services to Mother, which *Caden C.* makes clear are based on an entirely different determination than that which must be made with respect to the parental benefit exception. Indeed, the findings made in connection with terminating services were based on the Agency's recommendations adopted by the Court as its findings, and included: "Reasonable services have been offered or provided. . . . [¶] [M]other . . . has not . . . participated regularly and made substantive progress in court-ordered treatment programs; [¶] . . . [has not] made substantive progress in complying with the case plan; [or] [¶] alleviated or mitigated the causes necessitating out-of-home placement."

But as the court in *Caden C.* explained, "[p]arents need not show that they are 'actively involved in maintaining their sobriety or complying substantially with their case plan' [citation] to establish the exception." (*Caden C.*, *supra*, 11 Cal.5th at p. 637.) Thus, the findings on which the court relied in terminating reunification services were simply not relevant to a determination of the whether the parental benefit exception applied.

The Agency, apparently recognizing that under *Caden C.*, the juvenile court's express findings do not support its ruling, maintains: "Even if the

court did not specifically note the issues in its decision, the evidence was clear and thus the findings are implied."[5]

Rather than making only implied findings, however, the court here made express findings: "[t]oday's termination of parental rights is based upon the findings made today and previous findings made denying and/or terminating services to the parents." The previous findings on which it expressly relied—those supporting the termination of services to Mother— could not be the basis for denial of the parental benefit exception at a section 366.26 hearing under *Caden C.* Thus, the court's express findings demonstrate it considered factors which *Caden C.* has since explained are inappropriate in determining whether the parental benefit exception applied. (See *Caden C., supra*, 11 Cal.5th at pp. 632-633.)

In sum, "the juvenile court did not have the benefit of the guidance provided in *Caden C.,"* and as a consequence considered improper factors in determining whether the parental benefit exception applied. (*In re B.D., supra*, 2021 WL 3161564, * 5.) We therefore remand the matter for the court to conduct a new section 366.26 hearing in accordance with *Caden C.* We

---

[5] "The doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to support the judgment." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.) It has been applied to an order rejecting the parental benefit exception where the record overwhelmingly supported that finding. (See *In re Andrea R.* (1999) 75 Cal.App.4th 1093, 1109.) In that case, "neither parent had visited [the minor] regularly during the past six years of her life, neither had progressed beyond monitored visits, neither played a meaningful and significant parental role, and the most recent visits and telephone calls with appellants had left [the minor] confused, upset, and so anxiety-ridden that she lost control of her bodily functions." (*Ibid*.)

13

express no opinion on whether the parental benefit relationship exception applies.

## DISPOSITION

The order terminating parental rights is reversed. The matter is remanded for the juvenile court to conduct a new section 366.26 hearing in conformance with the principles articulated in *Caden C.*, *supra*, 11 Cal.5th 614, and taking into consideration the family's current circumstances and any developments in the dependency proceedings that may have arisen during the pendency of the Supreme Court's review and this appeal.

_____
Banke, J.

We concur:


_____
Margulies, Acting P.J.


_____
Sanchez, J.


A158143, Alameda County Social Services v. MB